## United States District Court, Northern District of Illinois

| Name of Assigned Judge or Magistrate Judge | DAVID H. COAR | Sitting Judge if Other than Assigned Judge | |
|---|---|---|---|
| **CASE NUMBER** | 02 C 1590 | **DATE** | SEP 4 - 2002 |
| **CASE TITLE** | Ronald Myers, #N-30973 vs. Dr. James McAuley, et al. | | |

**MOTION:** [In the following box (a) indicate the party filing the motion, e.g., plaintiff, defendant, 3rd party plaintiff, and (b) state briefly the nature of the motion being presented.]

**DOCKET ENTRY:**

(1) ☐ Filed motion of [ use listing in "Motion" box above.]
(2) ☐ Brief in support of motion due _____.
(3) ☐ Answer brief to motion due_____. Reply to answer brief due_____.
(4) ☐ Ruling/Hearing on _____ set for _____ at _____.
(5) ☐ Status hearing[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(6) ☐ Pretrial conference[held/continued to] [set for/re-set for] on _____ set for _____ at _____.
(7) ☐ Trial[set for/re-set for] on _____ at _____.
(8) ☐ [Bench/Jury trial] [Hearing] held/continued to _____ at _____.
(9) ☐ This case is dismissed [with/without] prejudice and without costs[by/agreement/pursuant to]
  ☐ FRCP4(m)   ☐ General Rule 21   ☐ FRCP41(a)(1)   ☐ FRCP41(a)(2).
(10) ■ [Other docket entry] For the reasons set forth in the accompanying Memorandum Opinion and Order, the defendants' motion to dismiss [#23] is granted in part and denied in part. The plaintiff's requests for injunctive relief are dismissed as moot in light of his transfer from county jail custody to state custody; the amended complaint is also dismissed insofar as the defendants are sued in their official capacities. The motion to dismiss is denied in all other respects. The defendants are directed to answer the amended complaint within twenty-one days of the date of this order.
(11) ■ [See attached Memorandum Opinion and Order.]

| | No notices required, advised in open court. | | | **Document Number** |
|---|---|---|---|---|
| | No notices required. | | number of notices | |
| | Notices mailed by judge's staff. | | SEP - 5 2002 | |
| | Notified counsel by telephone. | | date docketed | 31 |
| ✓ | Docketing to mail notices. | | docketing deputy initials | |
| | Mail AO 450 form. | | | |
| | Copy to judge/magistrate judge. | | date mailed notice | |
| mjm | courtroom deputy's initials | Date/time received in central Clerk's Office | mailing deputy initials | |

IN THE UNITED STATES DISTRICT COURT
FOR THE NORTHERN DISTRICT OF ILLINOIS
EASTERN DIVISION

DOCKETED
SEP 5 2002

RONALD MYERS, #N-30973         )
                               )
        Plaintiff,              )
                               )
    v.                          )    NO. 02 C 1590
                               )
DR. JAMES McAULEY, et al.      )    HON. DAVID H. COAR
                               )
        Defendants.             )

## MEMORANDUM OPINION AND ORDER

The plaintiff, currently a state prisoner, has brought this *pro se* civil rights action pursuant to 42 U.S.C. § 1983. The plaintiff claims that the defendants, health care providers at the Cook County Jail, violated the plaintiff's constitutional rights by acting with deliberate indifference to his serious medical needs. More specifically, the plaintiff alleges that the defendants refused to provide proper, post-tracheotomy treatment. This matter is before the court for consideration of the defendants' motion to dismiss the amended complaint. For the reasons stated in this order, the motion will be denied, except to the plaintiff is suing the defendants in their official capacities and to the extent he seeks injunctive relief.

It is well established that *pro se* complaints are to be liberally construed. *Haines v. Kerner*, 404 U.S. 519, 520 (1972), *reh'g denied*, 405 U.S. 948 (1972); *see also McCormick v. City of Chicago*, 230 F.3d 319, 325 (7th Cir. 2000). They can be dismissed for failure to state a claim only if it appears "beyond doubt that the plaintiff can prove no

31

set of facts in support of his claim which would entitle him to relief." *Haines*, 404 U.S. at 521; *Zimmerman v. Tribble*, 226 F.3d 568, 571 (7th Cir. 2000).

When considering whether to dismiss a complaint for failure to state a claim upon which relief can be granted, the court takes the allegations in the complaint as true, viewing all facts--as well as any inferences reasonably drawn therefrom--in the light most favorable to the plaintiff. *Autry v. Northwest Premium Services, Inc.*, 144 F.3d 1037, 1039 (7th Cir. 1998). Dismissal should be denied whenever it appears that a basis for federal jurisdiction in fact exists or may exist and can be stated by the plaintiff. *Jones v. Edgar*, 3 F. Supp. 2d 979, 980 (C.D. Ill. 1998).

## FACTS AND PROCEDURAL HISTORY

The plaintiff, Ronald Myers, is a state prisoner. (Address Change Notice, docket #17.) At the time of the events giving rise to this action, the plaintiff was an inmate at the Cook County Jail. (Amended Complaint, p. 2, Part I, "Plaintiff(s)" section.)

The defendant James McAuley is the Cook County Jail's Medical Director. (*Id.*, Part II, "Defendant(s)" section.) The defendants Andrew Thig (sued as "Ting"), M. Mansour, and Carlos Altez are all staff physicians at the jail. (*Id.*, pp. 2-2A.)[1]

The plaintiff alleges the following facts, which will be accepted as true for purposes of this motion: The plaintiff arrived at the Cook County Jail on July 26, 2001.

---

[1] By Minute Order of March 6, 2002, the court rejected the original complaint pursuant to 28 U.S.C. § 1915(e)(2)(B) and directed the plaintiff to file an amended complaint curing various pleading and filing deficiencies. The plaintiff's amended complaint dropped all other defendants named in the original pleading.

(Amended Complaint, p. 6.) The plaintiff explained to a doctor during his initial medical screening that he had a tracheotomy tube in his throat. (*Id.*) The plaintiff was told that he would be housed in the hospital ward, but due to a paper mix-up, he was instead placed in the facility's maximum security segregation unit. (*Id.*)

The next day, the plaintiff was transferred to the general population. (*Id.*) A correctional officer remarked that the plaintiff should be in the hospital. (*Id.*) A nurse examined the plaintiff, but not a doctor. (*Id.*) The plaintiff was moved to a different housing unit [but not, apparently, the medical unit]. (*Id.*)

The plaintiff did not see a doctor for two weeks. (*Id.*) The plaintiff told a nurse that his tracheotomy tube had to be cleaned out, but a nurse informed him that they did not have the right pumps. (*Id.*) The defendant Thig likewise informed the plaintiff that there was nothing the health care staff could do for the plaintiff because they lacked the proper equipment. (*Id.*, pp. 6-7.)

The defendant Altez arranged for the plaintiff to see an ear-nose-throat doctor at the Cook County Hospital. (*Id.* at p. 7.) The ENT doctors at the Cook County Hospital recommended that the plaintiff be hospitalized, but their recommendation was ignored. (*Id.*)

On February 15, 2002, the plaintiff told Altez that his throat was clogged and that he was having problems. (*Id.*) Altez failed to take any action. (*Id.*) The plaintiff went another two weeks without seeing a doctor, despite complaining to a nurse that he was in

3

"very bad pain" and that his throat was bleeding. (*Id.*) On an unspecified date, the plaintiff voiced the same complaints to the defendant Mansour, who failed to make sure that the plaintiff's tracheotomy tube was cleaned or that he received other needed medical attention. (*Id.*) Throughout the relevant time period, the plaintiff wrote letters to the defendant McAuley requesting his assistance. (*Id.*)

The plaintiff could barely eat or drink and he "fell out" (presumably, fainted) due to shortness of breath. (*Id.*) Fellow inmates were forced to give the plaintiff "bear hugs" to force the clogged fluids out of his lungs so that he could breathe. (*Id.*)

## DISCUSSION

The defendants' motion to dismiss will be denied. The plaintiff has demonstrated that he availed himself of administrative remedies prior to bringing suit. Furthermore, accepting the plaintiff's factual allegations as true, the amended complaint states a colorable cause of action against the four named defendants. The undeveloped record supports an inference that the defendants acted with deliberate indifference to the plaintiff's serious medical needs. Consequently, the plaintiff will be permitted to proceed on his claims, at least to the extent that the plaintiff is suing the defendants in their individual capacities for monetary damages.

## I. Exhaustion

The court makes a preliminary finding that the plaintiff satisfied [or at least attempted to satisfy] the PLRA administrative exhaustion requirement before filing suit.

4

The Prison Litigation Reform Act of 1996 ("PLRA") contains a comprehensive administrative exhaustion requirement dictating that "[n]o action shall be brought with respect to prison conditions . . . by a prisoner . . . until such administrative remedies as are available are exhausted." 42 U.S.C. § 1997(e)(a). "[E]xhaustion is now required for all actions brought with respect to prison conditions, whether under § 1983 suits or any other Federal law." *Porter v. Nussle*, 534 U.S. 516, 122 S.Ct. 983, 988 (2002). "[I]f a prison has an internal administrative grievance system through which a prisoner can seek to correct a problem, then the prisoner must utilize that administrative system before filing a claim" under 42 U.S.C. § 1983. *Massey v. Helman*, 196 F.3d 727, 733 (7th Cir. 1999), *cert. denied*, 532 U.S. 1065 (2001).

As the defendants correctly point out, the plaintiff never completely exhausted the multi-level grievance process. The court recognizes that an inmate must comply with the rules established by the State with respect to the form and timeliness of grievances. *Pozo v. McCaughtry*, 286 F.3d 1022, 1023-25 (7th Cir. 2002) (where prisoner failed to avail himself of the administrative grievance process in a timely manner, he was barred from pursuing relief in federal court). Informal letters do not satisfy the administrative exhaustion requirement; furthermore, an inmate must appeal any adverse decisions prior to initiating suit.

However, this case differs from *Pozo* in two significant respects: first, the plaintiff has shown that he made numerous efforts to avail himself of the grievance process but

5

received no responses to his grievances. *See* amended complaint at p. 3: "I wrote [grievances] and given (sic) them to the social worker and wrote letters to the people in charge. Never heard anything. . . . I never got an answer." In response to the motion to dismiss, the plaintiff has submitted [in addition to copies of multiple letters to the defendant McAuley and one to the Internal Affairs division] copies of twenty-two, apparently non-processed grievances he allegedly filed concerning the need for medical attention. The grievances date from July 2001 to May 2002.

The plaintiff maintains that he received no responses to his grievances. Because the plaintiff purportedly received no decision on his grievances, he was therefore unable to appeal. The court is aware of no Cook County Jail regulation permitting an inmate to bypass institutional review and appeal to the Administrator of Program Services if he receives no response from the correctional rehabilitation worker.

Second, with respect to the sole grievance that bears a response, the plaintiff was granted–or ostensibly granted–the basic relief sought at the first level. A grievance dated February 14, 2002, bears the following Response Statement: "Mr. Myers was 'bumped' along with several other patients. With 4 chemotherapy & 1 radiation therapy patients to be moved daily, other patients' appts are being rescheduled. Mr. Myers is tentatively scheduled for later this month." (*See* unmarked exhibit to the plaintiff's Motion to Respond to Said Motion to Dismiss.) Because the plaintiff's concerns about the lack of

medical attention were supposedly being addressed and rectified by the health care unit, there would have been no reason to appeal the decision to the next level of review.

> Requiring a prisoner who has won his grievance in principle to file another grievance to win in fact is certainly problematic. Although the time spent in exhausting administrative remedies is tolled for purposes of limitations on filing a federal complaint . . . this would be cold comfort to a prisoner caught in some never-ending cycle of grievances. For, if a prisoner who wins on his initial grievance must file one further grievance to get practical relief, what is to prevent the prison system from repeatedly failing to follow through and requiring the prisoner to endlessly seek a real resolution?

*Dixon v. Page*, 291 F.3d 485, 490 (7th Cir. 2002) (internal citation omitted). Although *Dixon* dealt with multiple grievances as opposed to the appeal process, the same reasoning applies. The jail cannot fail to follow through on promised action and then reasonably fault the plaintiff for failing to complete the administrative review process.

In short, all but one of the plaintiff's grievances were evidently lost or destroyed without being addressed. The court finds as a matter of law that because no action was taken on those grievances, the plaintiff had no "available" administrative remedy and thus cannot be barred from pursuing relief in federal court. Furthermore, because the one answered grievance seemingly resolved the problem at the institutional level, the plaintiff was entitled to rely in good faith that the promised follow-up would occur; he therefore had no occasion to appeal the decision. Accordingly, the court deems the exhaustion requirement effectively satisfied. The complaint will not be dismissed for failure to fully exhaust administrative remedies prior to bringing suit.

## II. Personal Involvement

The amended complaint sets forth facts briefly detailing the direct, personal involvement of each of the named defendants, as required by *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995); *Vance v. Washington*, 97 F.3d 987, 991 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997) (citations omitted). McAuley allegedly ignored numerous letters pleading for assistance. Thig, rather than providing any treatment, simply told the plaintiff that there was nothing the health care staff could do for him without the right equipment. McAuley made no arrangements for the medical care the plaintiff says he needed. Altez may have referred the plaintiff to an ENT doctor at the Cook County Hospital, but he failed to render any of the follow-up care recommended by the hospital physicians, even though the plaintiff complained that his tracheotomy tube was clogged and that he was having problems breathing. Mansour is similarly alleged to have failed to ensure that the plaintiff's tracheotomy tube was cleaned or that he received other needed medical attention when the plaintiff asked for treatment. None of the defendants is sued solely on the basis of *respondeat superior*. The complaint adequately articulates the direct, personal involvement of each named defendant.

## III. Deliberate Indifference to Serious Medical Needs

The record will require further development as to whether the defendants acted with deliberate indifference to the plaintiff's medical needs. It is not the case that the

plaintiff could prove "no set of facts . . . which would entitle him to relief." *See Haines*, 404 U.S. at 521."

It is well established that the Due Process Clause prohibits deliberate indifference to the serious medical needs of a pretrial detainee. *Qian v. Kautz*, 168 F.3d 949, 955 (7th Cir. 1999); *Salazar v. City of Chicago*, 940 F.2d 233, 237-38 (7th Cir. 1991). Deliberate indifference has both an objective and a subjective element: the inmate must have an objectively serious medical condition, and the health care provider must be subjectively aware of and consciously disregard a risk to the inmate's health or safety. *Farmer v. Brennan*, 511 U.S. 825, 837 (1994); *Estelle v. Gamble*, 429 U.S. 97, 103-04 (1976); *Sherrod v. Lingle*, 223 F.3d 605, 610 (7th Cir. 2000). In this case, the plaintiff has made a tentative showing of both prongs.

Contrary to the defendants' assertion, the plaintiff has stated facts indicating that his clogged post-tracheotomy tube constituted an objectively serious medical need. According to the plaintiff, both the medical screener while he was being processed at the jail and physicians at the Cook County Hospital thought his condition was sufficiently serious as to require hospitalization. The plaintiff additionally maintains that he experienced bleeding, fainting, a great deal of pain, decreased ability to eat and drink, and so much difficulty breathing that fellow inmates literally had to squeeze the air out of him. *See Gutierrez v. Peters*, 111 F.3d 1364, 1373 (7th Cir. 1997) (a condition is objectively serious if "failure to treat [it] could result in further significant injury or

unnecessary and wanton infliction of pain"), *citing McGuckin v. Smith*, 974 F.2d 1050, 1060 (9th Cir. 1997). The court will therefore assume for purposes of this motion that the plaintiff's medical needs were "serious." It is irrelevant that the plaintiff's tracheotomy pre-dated his incarceration if he still had a serious need for post-surgical care. If the plaintiff endured considerable pain, as he alleges, it is also immaterial whether he suffered lasting injury.

The defendants additionally argue that there was no deliberate indifference because mere disagreement with a physician's treatment does not implicate the Fourteenth Amendment. It is true that neither medical malpractice, *Steele v. Choi*, 82 F.3d 175, 178-79 (7th Cir.), *cert. denied*, 519 U.S. 897 (1996), nor dissatisfaction with a doctor's prescribed course of treatment, *Snipes v. DeTella*, 95 F.3d 586, 592 (7th Cir. 1996), *cert. denied*, 519 U.S. 1126 (1997), gives rise to a constitutional claim. But the defendants mischaracterize the nature of the plaintiff's claims: the plaintiff maintains that he was essentially denied basic, needed medical care. The plaintiff does not simply demand a particular treatment.

The subjective element of deliberate indifference encompasses conduct such as the refusal to treat a prisoner's chronic pain, *Jones v. Simek*, 193 F.3d 485 (7th Cir. 1999), the refusal to provide pain medication prescribed by a doctor, *Ralston v. McGovern*, 167 F.3d 1160, 1162 (7th Cir. 1999), or erroneous treatment based on a substantial departure from accepted medical judgment, practice, or standards. *Sherrod*, 223 F.3d at 611; *Vance v.*

*Peters*, 97 F.3d 987, 992 (7th Cir. 1996), *cert. denied*, 520 U.S. 1230 (1997). The fact that a prisoner received **some** medical attention does not necessarily defeat his claim; deliberate indifference to a serious medical need can be manifested by "woefully inadequate action" as well as by no action at all. *Reed v. McBride*, 178 F.3d 849, 854 (7th Cir. 1999). A plaintiff can show that the professional disregarded a serious medical need "if the professional's subjective response was so inadequate that it demonstrated an absence of professional judgment, that is, that no minimally competent professional would have so responded under those circumstances." *Collignon v. Milwaukee County*, 163 F.3d 982, 989 (7th Cir. 1998).

In the case at bar, the plaintiff alleges that he was all but denied needed medical treatment despite entering the jail after undergoing surgery which required follow-up care. The plaintiff maintains that the defendants failed to act on his pleas for medical treatment, virtually throwing up their hands and saying there was nothing they could do for him. Although the plaintiff concedes in his response to the motion to dismiss that laerdal suction was ultimately performed in May 2002 [two months after he filed suit], the plaintiff may nevertheless be entitled to damages for the alleged ten-month delay in receiving treatment.

In short, the court must accept as true at this stage of the proceedings that the plaintiff was forced to go long periods of time without needed medical care. If, as the plaintiff claims, he had a "serious" medical need, then the doctors may be liable for

withholding treatment solely because they did not have "the right equipment." The defendants must explain why they could not either obtain the necessary tools to address the plaintiff's medical needs or make arrangements for him to be treated outside the institution. A reasonable person could infer, based on the plaintiff's representations, that the defendants acted with deliberate indifference. The undeveloped record does not support a finding in favor of the defendants as a matter of law. The court disagrees that the amended complaint reflects "prompt and continual medical attention."

## IV. Official vs. Individual Capacity

The complaint will be dismissed against the defendants only insofar as they are sued in their official capacities. The plaintiff's failure explicitly to indicate in the amended complaint whether he was suing the defendants in their individual or official capacities is a non-issue. The Court of Appeals for this circuit has specifically rejected the presumption that § 1983 plaintiffs who fail to designate whether a defendant is sued in his individual or official capacity have intended the suit as an official capacity action. *See, e.g., Miller v. Smith*, 220 F.3d 491, 494 (7th Cir. 2000); *Hill v. Shelander*, 924 F.2d 1370, 1373 (7th Cir. 1991). An official capacity suit will be presumed only "when the indicia of an official policy or custom are present in the complaint." *Hill*, 924 F.2d at 1373.

In this case, the plaintiff is not suing Cook County and he does not allege that an official policy or custom violated his constitutional rights; he does not even mention any

official custom or policy. *Compare Wynn v. Southward*, 251 F.3d 588, 592 (7th Cir. 2001); *see also Miller*, 220 F.3d at 494. The plaintiff clarifies in his brief opposing dismissal that he is suing the defendants in both their individual and official capacities, but the defendants correctly assert that the plaintiff has no viable official capacity claim. The plaintiff may proceed against the defendants only in their individual capacities.

## V. Injunctive Relief

Finally, the plaintiff's requests for injunctive relief ("proper medical services," "access to proper medical machines," etc.) must be dismissed as moot since he is no longer in the custody of the Cook County Department of Corrections. A pretrial detainee's claims for injunctive relief are rendered moot when the detainee is transferred to a state correctional center. *Martin v. Davis*, 917 F.2d 336, 339 (7th Cir. 1990), *cert. denied*, 501 U.S. 1208 (1991); *Henderson v. Sheahan*, 196 F.3d 839, 849 n.3 (7th Cir. 1999), *cert. denied*, 530 U.S. 1244 (2000).

## CONCLUSION

In sum, the amended complaint is dismissed only as to the plaintiff's now-moot requests for injunctive relief and insofar as the defendants are sued in their official capacities. The court finds that the plaintiff has satisfied the administrative exhaustion requirement; the court further finds that the plaintiff has made a *prima facie* showing that the defendants acted with deliberate indifference to his serious medical needs. The plaintiff will accordingly be permitted to proceed on his claims against the defendants to

the extent that they are sued in their individual capacities. This order is not intended to discourage either party from filing a properly supported motion for summary judgment.

IT IS THEREFORE ORDERED that the defendants' motion to dismiss (docket #23) is granted in part and denied in part. The complaint is dismissed pursuant to Fed. R. Civ. P. 12(b)(6) as to the plaintiff's claims for injunctive relief, as well as to the plaintiff's claims against the defendants in their official capacities. The motion to dismiss is denied in all other respects.

IT IS FURTHER ORDERED that the defendants answer or otherwise plead within twenty-one days of the date of this order.

Enter:

*[signature]*

David H. Coar
United States District Judge

Date: 9/04/02